# Luckenbill v. Eastern Pennsylvania Railways Company, Appellant.

*Negligence—Street railways—Speed—Signal—Evidence.*

1. In an action by the driver of a wagon against a street railway company to recover damages for personal injuries sustained when a car of the defendant ran into plaintiff's wagon from behind, the case is for the jury on the question of defendant's negligence where, although the plaintiff produces only one witness as to the high speed of the car, and his testimony is unsatisfactory, yet the testimony of the motorman shows conditions from which the only inference can be drawn was that of undue speed at a dangerous curve, and plaintiff's testimony that he heard no signal, is supported by the testimony of the motorman which showed that he did not begin to ring his bell until within a very short distance of plaintiff's wagon.

2. A driver of a wagon cannot be convicted of contributory negligence because he drove partly on the single track of a street railway, and not wholly on the side; and this is particularly so where he drives on the track so as to avoid a rough part of the road which had recently been repaired.

Argued Dec. 14, 1910. Appeal, No. 10, Oct. T., 1909, by defendant, from judgment of C. P. Carbon Co., Jan. Term, 1909, No. 43, on verdict for plaintiff in case of William H. Luckenbill v. Eastern Pennsylvania Railways Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,386.15. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*Frederick Bertolette*, with him *R. H. Koch*, for appellant.

*Frank P. Sharkey*, with him *Nathan M. Bailliet* and *Ira E. Seidle*, for appellee.

OPINION BY PORTER, J., July 13, 1911:

The plaintiff recovered judgment in the court below for personal injuries alleged to have been sustained in a fall from his wagon caused by a collision with a car of the defendant company. The plaintiff alleged and produced evidence tending to establish negligence upon the part of those operating the car in two particulars, to wit: (1) That the car was run at an excessive and dangerous rate of speed, under the circumstances, and (2) that those operating the car gave no sufficient warning of its approach, so as to permit the plaintiff to get out of the way. The defendant appeals and alleges that the court erred in submitting the question of the negligence of the defendant company to the jury, and, also, that the court should have declared as matter of law that the plaintiff was guilty of contributory negligence.

The defendant company operates an electric railway within the line of the public road leading from Nesquehoning to Mauch Chunk, upon a single track, which is laid upon the western side of the highway, or at the right hand side of the road in proceeding from the place first named to Mauch Chunk. The plaintiff was driving in this direction upon the right hand side of that part of the road outside of the track, the wheel of his wagon nearest the track being eighteen or twenty inches distant therefrom. The car, moving in the same direction, rapidly approached from behind and struck the hub of the hind wheel of the wagon, throwing the plaintiff violently to the ground. The plaintiff testified that he was driving in the beaten track used by wagons, that the part of the highway to the left of the track was very rough and stony, having been recently reconstructed, that he heard no signal of the approach of the car until he heard the sound of its running on the rail, when he immediately pulled his horse to the left away from the track, but that the hub of the rear wheel of his wagon was struck by the car almost instantly. The evidence as to the rate of speed at which the car was running was very meager. The plaintiff called but

one witness upon this point, who testified that the car was running at the rate of fifteen miles an hour, and in view of the limited qualifications of this witness to judge of the rate of speed, as indicated by his testimony, and the fact that this was a line operating upon a country road, we incline to the opinion that if this evidence stood alone the question of negligence in the rate of speed at which the car was run ought not to have been submitted to the jury. This evidence did not, however, stand alone. The plaintiff called as a witness the motorman who had been in charge of the car and he testified that as soon as he saw the position of the plaintiff's wagon he applied the brakes, which were in good condition, used sand upon the rail and reversed the machinery, that with all these precautions the car ran from 130 to 140 feet before striking the wagon, which it knocked out of the way, and then ran 125 feet further. This was not a case in which an employee of the defendant company was surprised by finding the rail in a condition which he could not have anticipated; this witness testified that he was aware of the condition of the rail and the surrounding circumstances. If the testimony of this witness was true, the car ran around an abrupt curve, which prevented the motorman seeing a person who might lawfully be upon the highway until he was distant only 140 feet, at a rate of speed which made it not only impossible to avoid a collision but to stop the car until it had passed 125 feet beyond the point of the accident. The rate of speed at which a car may properly run within the lines of a public highway must necessarily be dependent upon circumstances. The defendant company in the present case offered no testimony whatever as to the rate of speed at which the car was running. The testimony produced by the plaintiff while not satisfactory in itself, was corroborated by the testimony of the motorman as to what occurred, and taking all this evidence together it fairly raised a question for the jury, as to whether the car was being operated at a rate of speed which was reckless, under the circumstances.

The plaintiff testified that he heard no signal or warning of the approach of the car until he heard the sound of the wheels running upon the rail, that he then attempted to get out of the way but had not time to do so. He called as a witness Roy Jenkins who had been a passenger on the car, and that witness testified that no whistle had been blown nor bell rung. The defendant, upon this point, produced only the testimony of the motorman, who testified that he rang the gong repeatedly, but he also testified that he did not start to ring until from within 130 to 140 feet of the point where the collision occurred. We must, therefore, accept it as conclusively settled by the evidence that no bell was rung or other signal given until the car was within 140 feet of plaintiff's wagon, the horse in which was then being driven at a slow walk. Now the evidence in this case would certainly have warranted a finding that the motorman could have seen this wagon, if he had looked when he was at least 300 feet distant from the wagon and during all the time that he traveled from that point until the collision occurred. The reasons which require any warning to be given of the approach of a car necessarily demand that the warning must be timely. If this car was running at a rate of speed which made it impossible to avoid a collision unless the plaintiff succeeded in getting his wagon out of the way, then the gong ought to have been rung as soon as the motorman ought to have known that there was danger of a collision. If he permitted the car to run from 160 to 200 feet, under these circumstances, without attempting to give the plaintiff warning of the approach of the car, the question whether this delay in giving warning was negligence, in such a condition of affairs, was for the jury.

The point where this accident occurred was within the lines of a public road. The plaintiff was not attempting to cross the track, but for his own convenience he kept in the beaten track for wagons, avoiding the rougher part of the road which had been recently repaired. The public

had a right to use the entire public road, upon which the track of the defendant company was laid. Their right to use that part of the road within the tracks, or so nearly adjacent to them as to interfere with the passage of cars, was subordinate only to the right of the company to have a clear track. They are expected to use both from necessity at times and from convenience when it offers a better passageway. "One using it for convenience, as was the case here, cannot be charged with negligence simply because of the fact that he could have driven at the sides of the street," or as in this case, at the other side of the road: Barto v. Beaver Valley Traction Co., 216 Pa. 328; Sturgeon v. Beaver Valley Traction Co., 216 Pa. 322; Mortimer v. Beaver Valley Traction Co., 216 Pa. 326. The line of the defendant company was but a single track, over which cars ran in both directions; this made it necessary that the plaintiff should take reasonable precautions to observe whether a car was approaching him from the front; he must also pay some attention to where he was driving, he could not keep looking back all the time. The wagon in which he was driving was an open one and there was nothing to prevent his hearing a signal from any car which might approach from the rear. The curve in the tracks behind him prevented his seeing a car approaching in that direction when it was more than 150 feet distant. There was in this case no evidence as to whether the plaintiff had or had not looked back along the line of the tracks, nor was there any evidence that he knew a car was approaching from that direction. The whole evidence did not so clearly disclose negligence on the part of the plaintiff that no other inference could properly be drawn from it; the court could not draw the inference as a conclusion of law, but must send the case to the jury: Armstrong v. Consolidated Traction Co., 216 Pa. 595. The specifications of error are all overruled.

The judgment is affirmed.